United States District Court

Eastern District of California

Patrick Ronald Holley,

      Plaintiff,

vs.

California Department of Corrections, et al.,

      Defendants.

No. Civ. S 04-1425 GEB PAN P

Findings and Recommendations

-oOo-

Plaintiff is a state prisoner without counsel seeking redress for alleged violation of his federal civil rights pursuant to 42 U.S.C. § 1983.

In his July 20, 2004, complaint plaintiff alleges deliberate indifference to his serious medical needs and retaliation for exercise of rights protected by the First Amendment. The court approved service of process on defendants Herrera, Providence, O'Ran, Mirich, Jako, Veal, Allen and Grannis.

1  January 14, 2005, these defendants moved to dismiss under
2  Fed. R. Civ. P. 12(b)(6) and on the ground plaintiff failed to
3  exhaust administrative remedies against any defendant except
4  Herrera. Plaintiff opposed January 25, 2005. Defendants replied
5  January 31, 2005.

6  The court first will address whether plaintiff states a
7  claim under Fed. R. Civ. P. 12(b)(6). The court must accept
8  plaintiff's allegations as true, read the complaint most
9  favorably to plaintiff, give plaintiff the benefit of every
10 reasonable inference that appears from the pleading and argument
11 of the case and dismiss the complaint only if it is clear that no
12 relief could be granted under any set of facts that could be
13 proved consistent with the allegations. Wheeldin v. Wheeler, 373
14 U.S. 647, 658 (1963); Retail Clerks International Association,
15 Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 754 n.6
16 (1963); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The
17 court may consider documents attached to the complaint in
18 evaluating a motion to dismiss. Parks School of Business, Inc.
19 v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

20 Defendants correctly assert the pleading fails to state a
21 claim of deliberate indifference under the Eighth Amendment with
22 respect to the provision of medical care. "The unnecessary and
23 wanton infliction of pain upon incarcerated individuals under
24 color of law constitutes a violation of the Eighth Amendment . .
25 ." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991). A
26 violation of the Eighth Amendment occurs when prison officials

deliberately are indifferent to a prisoner's medical needs. <u>Id.</u> The threshold for a medical claim under the Eighth Amendment is extremely high:

> A prison official acts with "deliberate indifference . . . only if [he] knows of and disregards an excessive risk to inmate health and safety." <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." <u>Gibson</u>, 290 F.3d at 1188 (citation omitted) [footnote omitted]. This "subjective approach" focuses only "on what a defendant's mental attitude actually was." <u>Farmer</u>, 511 U.S. at 839. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. <u>McGuckin</u>, 974 F.2d at 1059 (alteration and citation omitted).

<u>Toguchi v. Chung</u>, 391 F.3d 1051 (9th Cir. 2004).

Delay in medical treatment can amount to deliberate indifference if (1) the delay seriously affected the medical condition for which plaintiff was seeking treatment, and (2) defendants were aware the delay would cause serious harm. <u>Shapley v. Nevada Board of State Prison Commissioners</u>, 766 F.2d 404, 408 (9th Cir. 1985).

Here, assuming arguendo plaintiff has alleged a serious medical need, he fails to state a claim because the complaint states immediately after plaintiff left Herrera's office, another correctional officer escorted him to the medical clinic where he received appropriate treatment. Any delay did not "seriously

affect" plaintiff's medical condition.  Plaintiff's Eighth Amendment claim fails as a matter of law.

Plaintiff's allegations regarding verbal harassment also fail to state a claim for relief.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

This brings us to plaintiff's retaliation claims.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, ___ F.3d ___, 2005 WL 937814, *5 (9th Cir. 2005) (citations omitted).  In assessing the fourth requirement, the court at the pleading stage should ask "'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'"  Id. at *6, quoting Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999).

Here, plaintiff alleges he filed a previous civil rights complaint and Herrera refused to obtain medical care on his behalf, stating that if plaintiff fainted he would be disciplined for "faking" and telling plaintiff "you damn litigators don't have nothing coming."  Complaint at 10:19-26.  A person of reasonable firmness would be chilled from future First Amendment activities in the circumstances.  Plaintiff states a claim

4

1 Herrera retaliated against his exercise of First Amendment
2 rights.

3     Plaintiff claims defendants Providence, O'Ran, Mirich, Jako,
4 Veal, Allen and Grannis ratified Herrera's misconduct by the way
5 they handled plaintiff's grievance.  To state a claim against a
6 supervisor in his or her individual capacity plaintiff must
7 allege the supervisor set in motion a series of acts by others,
8 or knowingly refused to terminate a series of acts by others,
9 that the supervisor knew or reasonably should have known would
10 cause others to inflict constitutional injury.  <u>Larez v. City of</u>
11 <u>Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991).  A supervisory
12 official also may be liable in his individual capacity for his
13 own culpable action or inaction in  training, supervising, or
14 controlling his subordinates, for his acquiescence in
15 constitutional deprivations or for conduct that reflects a
16 reckless or callous indifference to the rights of others.  <u>Larez</u>,
17 946 F.2d at 646 (internal quotations omitted).

18     Plaintiff's complaint alleges:

> Lt. K. Providence intentionally looked over pertinent
> documentation and evidence, to maliciously deny
> plaintiff's constitutional and statutory rights, and
> recruited the powers of [A]ssociate Warden Sterling
> O'Ran to tacitly authorize these acts, which show a
> practice, policy and custom of corruption throughout
> high-ranking officials of the CDC et. al.
>
> Upon appeal to second level response, plaintiff had a
> brief encounter with one Lt. Mirich.  Plaintiff
> informed this official of the blundered investigation
> of Lt. K. Providence, and pointed out the violations
> and demanded that this not be overlooked a second time,
> and that the retaliation claims be addressed.
> On second level response, Lt. Mirich recruited the

1  corrupt officials within the CMF Medical Clinic.  On
2  Feb. 17, 2004, Lt. Mirich states . . . that he
   contacted registered nurse Jako . . . to locate any
3  entries in plaintiff's medical file on Nov. 29, 2003,
   to support his claims. . . Jako stated that there was
4  nothing in plaintiff['s] file on Nov. 29, 2003, or
   nothing near that date to support his claims. . . [A]s
5  his predecessor, Lt. K. Providence, Lt. P. Mirich
   recruited the powers of Chief Deputy Warden Veal, to
6  intentionally deny plaintiff's statutory and
   constitutional rights.

7  So, plaintiff appealed to the director's level of
   review, and attached the medical records that CMF
8  officials intentionally co-conspired to conceal in
   order to further the retaliation that officer Sgt.
9  Herrera started, for plaintiff's action of filing a
   civil claim on CMF high-ranking officials.
10
   The appeal examiner for director's level of review, Ken
11 Allen, refused to look over plaintiff's documents and
   evidence, and showed the high-level of departmental
12 corruption that is prevalent through to the director's
   level, and systematically denied plaintiff's grievance
13 without investigating the retaliation claims, or other
   matters strongly supported throughout this appeal. . .
14 Then Ken Allen further enlisted the powers of chief of
   inmate appeals, N. Grannis, to conceal the injustice
15 that is everyday practice for the California Department
   of Corrections in violation of federal law. . . .
16

17 Complaint at 14-15.

18     In essence, plaintiff claims defendants who processed his

19 grievance intentionally and knowingly encouraged defendant Jako,

20 to hide records showing that, following plaintiff's conversation

21 with Herrera, plaintiff obtained permission to visit the medical

22 clinic where he was examined and indeed proved ill.  Plaintiff

23 further claims this occurred pursuant to a pattern and practice

24 wherein corrections officials cover up misdeeds of junior

25 officers by fabricating favorable administrative records.  These

26 allegations state a claim for relief.

However, claims against supervisors and Jako under a theory of ratification or conspiracy are not exhausted. Section 1997e(a) of Title 42 of the United States Code provides a prisoner may bring no § 1983 action until he has exhausted such administrative remedies as are available. The requirement is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The administrative remedy must be exhausted before suit is brought and a prisoner is not entitled to a stay of judicial proceedings in order to exhaust. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002). A prisoner need not plead exhaustion. Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003). Ordinarily, defendants must raise and prove absence of exhaustion as a defense raised by a motion to dismiss. Id. "Courts considering 'nonenumerated' Rule 12(b) motions on the issue of administrative exhaustion may not only rely on matters outside the pleadings but also have broad discretion to resolve any factual disputes." Irvin v. Zamora, 161 F. Supp. 2d 1125, 1128 (S.D. Cal. 2001), citing Ritza v. Internat'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1988).

The California Department of Corrections' administrative grievance procedure is set forth in Title 15 of the California Administrative Code at sections 3084.1, et seq. California prisoners or parolees may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." 15 CAC § 3084.1(a). The regulatory system does not dictate the content of the grievance

7

but it requires the use of specified forms. 15 CAC §§ 3084.2 and 3085 (designating use of CDC Form 602 Inmate/Parolee Appeal Form for all grievances except those related to disabilities under the Americans with Disabilities Act, which are filed on CDC Form 1824, Reasonable Modification or Accommodation Request). The first level of formal appeal must be decided within 30 working days by someone not involved in the dispute or grievance, who is at least equal in rank to the highest ranking person that was involved. 15 CAC § 3084.5(e). Ordinarily, a grievance must be taken to a second- and third-level appeal before exhaustion is complete. Id.

Few courts have addressed the specificity required for claims raised in the prison administrative grievance process to satisfy section 1997e(a) exhaustion requirements. Irvin v. Zamora, 161 F. Supp. 2d at 1129.

> When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

Strong v. Davis, 297 F.3d 646, 650 (7th Cir. 2002); see also Gomez v. Winslow, 177 S. Supp. 2d 977, 982 (N.D. Cal. 2001) (purpose of exhaustion is to provide prison officials notice of complaints so they can take proper action). In assessing exhaustion, a court should consider whether a reasonable investigation of the administrative claim would have uncovered the allegations of the civil rights complaint. Gomez v. Winslow,

177 F. Supp. 2d at 983; Irvin, 161 F. Supp. 2d at 1134-35; Sulton v. Wright, 265 F. Supp. 2d 292, 298 (S.D. N.Y. 2003), abrogated on other grounds as noted in Scott v. Gardner, 287 F. Supp. 2d 477 (S.D. N.Y. 2003); Torrence v. Pelkey, 164 F. Supp. 2d 264, 278-79 (D. Conn. 2001); see also Ngo v. Woodford, 403 F.3d 620, 630 (9th Cir. 2005) (PLRA exhaustion requirement resembles administrative exhaustion).

Here, defendants concede claims against Herrera were exhausted by grievance CMF 03-2056. See Declaration of Grannis in Support of Defendants' Motion to Dismiss & Ex. A thereto.

Plaintiff alleged in his third-level appeal "that all of the officials involved in the investigation are corrupt and blatantly lied." Motion to Dismiss at 5. This sole allegation in plaintiff's third-level appeal of his grievance against Herrera is not sufficient to place Grannis on notice plaintiff claimed Providence, O'Ran, Mirich, Jako, Veal and Allen (and, by implication, Grannis if the appeal were denied) acted under a system-wide pattern and practice of encouraging misconduct by junior officers by intentionally creating false grievance records to protect such miscreants.

Of plaintiff's retaliation claims, only that against Herrera is exhausted. Herrera is not entitled to dismissal based on the fact unexhausted claims were joined with exhausted claims. See Wyatt, 315 F.3d at 1120 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper

remedy is dismissal of the <u>claim</u> without prejudice") (emphasis added).

Accordingly, the court hereby orders that:

1. Defendants' January 14, 2005, motion to dismiss be granted in part.

2. All claims against defendant Herrera, except that of retaliation against plaintiff for exercise of First Amendment rights, be dismissed for failure to state a claim.

3. Claims against defendants Providence, O'Ran, Mirich, Jako, Veal, Allen and Grannis be dismissed for failure to exhaust administrative remedies.

4. Defendant Herrera be required to answer the complaint within 30 days of disposition of the motion to dismiss.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these findings and recommendations are submitted to the United States District Judge assigned to this case. Written objections may be filed within 20 days of service of these findings and recommendations. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge may accept, reject, or modify these findings and recommendations in whole or in part.

Dated: June 21, 2005.

/s/ Peter A. Nowinski
PETER A. NOWINSKI
Magistrate Judge